## WATERS v. CLINTON et al.
### No. 5706.

Court of Appeal of Louisiana.
Second Circuit.
June 30, 1938.

Rehearing Denied Nov. 4, 1938.

Writ of Certiorari and Review Denied
Feb. 6, 1939.

Hawthorn, Stafford & Pitts, of Alexandria, for appellant.

A. L. Burford, of Texarkana, Ark., and White, Holloman & White, of Alexandria, for appellees.

DREW, Judge.

Plaintiff instituted this suit for damages arising out of an automobile accident which occurred on January 6, 1937, on the Jefferson Highway approximately 14 miles west of Baton Rouge, Louisiana, near Erwinville. The damage was caused by a negro, named Clark, driving his car head-on into the right said of plaintiff's car. Plaintiff alleged that the proximate cause of the accident was defendant's negligence; that defendant attempted to pass his car on its left and cut back to his right too quickly, due possibly to misjudging the distance between the two automobiles, and, in doing this, the right rear bumper on defendant's car became entangled with the left front fender of plaintiff's car and that the automobile of defendant pulled or dragged plaintiff's onto the right shoulder and back onto the pavement, across the pavement into the path of the on-coming car driven by Clark.

Defendant denied the allegations of negligence and alleged that while passing plaintiff's car, it was suddenly turned to its left, north of the center of the road, causing plaintiff's fender to become entangled with his rear bumper.

We have made a careful study of the voluminous record in this case and have arrived at the same conclusion as did the lower court, that is, that plaintiff has failed to prove his cause. We find the facts of the case to be as follows:

Both automobiles were traveling east toward Baton Rouge on a straight stretch of road, the concrete part of which was 18 feet wide. The shoulder on the south side was five to six feet wide and the shoulder on the north side was approximately 25 feet wide. The weather was cloudy, misty and foggy and, of course, the road wet and more or less slippery. When at a point near Erwinville, approximately 14 miles west of Baton Rouge, defendant, who had been trailing plaintiff for several miles, attempted to pass him by driving to his left. Both cars up to that time were traveling between 40 and 50 miles per hour. When defendant decided to pass plaintiff's car, its left wheels were slightly over the center of the highway, possibly 18 inches. Defendant sounded his horn, plaintiff saw him in the mirror of his car and turned the front of the car to the right side of the road. By this time defendant's car was abreast of plaintiff's. When the rear left wheel of plaintiff's car crossed the black line, which was unusually slick as it always is in wet weather, the wheels skidded slightly, which caused plaintiff to suddenly turn back to his left. As this was done the right end of defendant's rear bumper went under

the left front fender of plaintiff's car. Immediately as this happened, defendant turned his car sharply to the left and plaintiff cut sharply to the right, and the two automobiles at once became disentangled. Defendant continued to his left off the pavement and onto the north shoulder, a distance of approximately 100 feet, before his car came to a stop. The car of plaintiff was evidently out of his control for it continued on to his right, off or partly off the pavement and continued with either one or all wheels on the right shoulder, a distance estimated from 125 to 200 feet east on the right shoulder, when it turned back onto the pavement, nearly diagonally across it, angling slightly back to the west. When it arrived at a point where its front wheels were off the north side of the concrete, about two or three feet, and the body of the car completely blocking the north side of the concrete, it was rammed by a fast moving automobile traveling west and driven by a negro professor, named Clark. In the car with Clark were four other negro college students and graduates. The impact was so great that plaintiff's car was practically demolished and he and his wife, who was also an occupant of the car, were both severely injured. From the effect of the injuries received by Mrs. Waters, she died some six months later.

Both plaintiff and defendant are positive that just prior to the first collision plaintiff's car was on the south side of the road. Plaintiff is sure he did not turn back to the north side before his car and defendant's became entangled. Defendant is equally as positive that plaintiff did turn the front of his car back to the north of the black center line a moment before his bumper and plaintiff's fender became entangled. They are both prominent men and of equal credibility, so far as we know. However, the physical facts strongly corroborate the defendant's version.

A number of witnesses, including Highway employees who are trained by experience in investigating accidents of this kind, and all of whom appeared on the scene a very short time after the occurrence of the collision, testified to the facts as we have found them to be. They found on the highway at a point 18 inches north of the medial line, a sizeable clod of dirt, partly dry, evidencing the fact that it came from under plaintiff's fender where it was protected from the rain and mist; that this point was where the two cars became entangled, the bumper with the fender, is further evidenced by the car tracks which were clearly visible due to the wet pavement, and showed the tracks of plaintiff's car beginning at this spot north of the black medial line and continuing off the pavement on the south side, continuing east on the shoulder, then back onto the pavement diagonally across it to the locus of the collision with the automobile driven by the negro, Clark. The great preponderance of the testimony supports these facts.

Plaintiff offers as against this testimony that of his two sons who arrived on the scene of the accident several hours after it had happened. They remained there not over ten minutes and it is evident they were more concerned about the injuries to their mother and father than they were over the physical facts surrounding the scene. Their arrival was after many persons and cars had visited the locus and after defendant's car had gone and their father's automobile had been pushed off onto the north shoulder. They testified that the tracks on the south shoulder indicated that both plaintiff's and defendant's cars had gone over the shoulder on the south side and both had come back onto the road and across to the north side. Their version from the tracks they claim to have seen is practically the same as that given by their father, a man seventy years of age. His testimony, however, is of little value as to what happened after his car and defendant's became entangled. He apparently was greatly excited and does not know exactly what happened thereafter. He never saw the car driven by the negro, Clark, until after it had rammed his automobile.

Five days after the accident plaintiff's two sons and a photographer visited the scene and made some photographs. They all testified to seeing four tracks on the south shoulder. We fail to locate them in the photographs offered in evidence. However, if the tracks were there five days after the accident, they would be of little probative value.

Plaintiff also relies strongly on the testimony of the negro, Clark, and three other negroes in the automobile with him. We can give but little weight if any to their testimony for the reason that it is wholly unexplainable. They testified that when they first saw the cars of plaintiff and defendant, both were on the south side

of the road, plaintiff's, which was black in color, was in front and defendant's automobile, which was blue or green, was behind it and looked as though it might be pushing plaintiff's car. At no time would any of them place the defendant's car ahead of plaintiff's. It is a conceded fact that when defendant's car became entangled with plaintiff's, the greater part of defendant's car was ahead of the car of plaintiff. They claim to have seen both cars in the positions they describe them go onto the south shoulder, remain on it for 125 feet or more, and then go back onto the pavement. However, none of them ever saw defendant's car cross from the south to the north shoulder of the highway. They all admit that defendant's car, immediateley after the accident, was on the far or north side of the north shoulder and was not behind plaintiff's car.

We are convinced, after a careful study of their testimony, that the four negroes are testifying to what they think might have happened and not as to what they saw. Their testimony is directly in conflict with all the physical facts, some of which are conceded. When the negro, Clark, said he saw something flash in front of him and then his car rammed it, he told about all he saw.

 Plaintiff contends that it was negligence for defendant to try to pass plaintiff's car at a time when the left lane of traffic was not clear of obstructions. This is a sound rule of law, but in the case at bar, we are of the opinion the lane was free of obstructions for a sufficient distance ahead to permit of passing. When defendant attempted to pass he did not see the on-coming Clark car. He did not see it until he had turned sharply to the left to disentangle his car from that of plaintiff. It therefore could not have influenced defendant to attempt to turn his car to the right side of the road too quickly, which is the theory of plaintiff's case. However, it did influence defendant, after he saw it, in continuing to his left onto the north shoulder. It is not shown that he could have seen the on-coming car or that it was close enough to make passing unsafe. When we consider the admitted fact that plaintiff's car, after becoming entangled with defendant's, turned to its right off the pavement and ran on the shoulder for a distance of about 125 to 200 feet, and then back onto the pavement, almost entirely across it before being struck by the Clark automobile, we cannot help but conclude that the latter car was a sufficient distance off when defendant attempted to pass plaintiff's car to permit of safe passage, for undoubtedly plaintiff's car was greatly slowed down after going onto the north shoulder.

Plaintiff further contends that it was negligence for defendant to attempt to pass plaintiff's car at a time when the latter car was partly on its left side of the road. The testimony of both plaintiff and defendant is that plaintiff's car pulled to its right side of the highway just before defendant's car attempted to pass.

We are of the opinion that plaintiff has failed to make out his case and that the testimony conclusively shows that defendant was free from fault or negligence that in any way contributed to the accident and injuries of plaintiff and his wife.

The judgment of the lower court is correct and is therefore affirmed, with costs.